The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States in this honorable court. You may be seated. We have four arguments this morning, and the first of them is No. 18-1338, Neology v. International Trade Commission. Good morning, Your Honor. May it please the Court, on page 2 of our opening brief, we have laid out three issues that are before you today. The first issue has to do with whether we, the appellant, waived our rights to a 2012 priority date for the patents in suit. And the third issue is about a prior art of snodgrass and whether the claims, the asserted claims are valid over snodgrass. We believe that the first and the third issues are the most straightforward and warrant a reversal. The second issue is a bit more complicated, and we have briefed that in our opening brief on pages 30 to 51. When you say waived the right to a 2012 priority date, do you mean waived a particular objection to the written description ground? I thought part of your argument was, or the issue here was that priority date and written description, though intertwined, were actually separate grounds. That is correct, Your Honor. The court below conflated sections 120 and 112. And everybody is on the same page, that the originally filed claims of the 2012 patent applications, which matured into the patents in suit, provide not just written description support, but provide verbatim written description support. At the ITC, the focus was on whether or not we can get the 2003 date, because there was a prior... That's from the 026 application. Because there was a prior art called the 6C protocol, which is dated 2006. If you take a look at page 3 of our reply brief, there is a quote from OUII's counsel, his opening statement at the ITC, where he acknowledges that if we're talking about 2012, then we have the written description support, because the original file claims issued with the patent. And so there is not only written description support, but a verbatim written description support. So everybody has been on the same page. But that issue was not discussed much. First of all, there's not much to discuss, because the two sets of claims are mirror images of each other. But more importantly, there was another prior art before... Is there some place before the ALJ where you pointed out, look, we believe we have full written description support for these claims regarding transmission of security keys, dating all the way back to our very, very first non-provisional application, 2002-2003. But in any event, at a minimum, we have written description support for these claims as of filing dates in 2012. Is there some place where you have that? Yes. Yes, Your Honor. We have actually briefed that in our opening brief at PAGES. Because obviously, the ITC found that you waived that particular argument for that more limited form of written description support, written description as of 2012, as opposed to 2002-2003. Yes. We disagree with the ITC, Your Honor. And we have briefed that on PAGES 27 through 29 of our opening brief. And also, if I may draw your attention to APPX 0176, or rather APPX 0175, which is the initial determination by the ALJ, there is a sentence there which says, thus, the priority dates of the 044 and 436 patents are May 4, 2012 and January 1, 2012, respectively. Right. I guess what I'm trying to figure out is, if we agree with the ITC and the ALJ that written description, the invalidity challenge, was in play in front of the ALJ, and if the whole argument as to validity on written description grounds was purely devoted to whether the 026 application satisfied the written description requirement for these claims now in your two minutes, then it doesn't sound like, at least in the context of that invalidity challenge, there was any argument raised on your side that, well, even if we lose on written description for purposes of what the 026 discloses, we most certainly have written description support for as of the 2012 filing dates. So, therefore, you cannot invalidate our claims for lack of written description. Okay. So, even if you were to disagree with what we have said in our opening brief and the evidence that we provided that we did bring back to the ALJ's attention, we have cited cases about the discretionary aspect of the waiver. So, for example, in our reply brief on page 9, we have cited the Harris case, Long Island case, and the interactive gift case. And, also, we have mentioned the In re Alton case, which says they have the burden of proof and persuasion. We have the, there is a presumption of validity of our patents. They have never made a prima facie case with any specificity that the original claims of the 2012 patent application do not provide written description support for the issued claims. They generally mention 112, but most of the time they discussed 120, which 112 is a component of 120, as the Riefen case teaches us, but they never made a prima facie case. So, even if you were to disagree with us that we were not specific enough in telling the ALJ that the originally filed claims and the issued claims are identical, and, therefore, we have written description support, and we believe we said enough, and as the quote on the reply brief from OUII's attorney. That's OUII's attorney. I was wondering if you could point me to something where your side said something to the ALJ. Sure. To why the ALJ should not rule to invalidate their claims for lack of written description because these claims were always present when the continuation applications were filed in Right. So on page 27, for example, we mention there's something in the joint appendix. So, for example, on 765, there is a sentence in our pre-hearing brief where you say, except  It's about a third of the way down the page, starting in the middle. Yes, my apologies, but except for the claims, the as-filed specification of the 026 patent is nearly identical to the respective applications that issued as the later member patents in the same family, including 568, 044, and 436. So that's one. And then we go to APPX 4775. 4775? Yes. This is your post-hearing brief? Yeah, this is post-hearing brief. And also, Your Honor, if I may, while I'm finding this, one thing I would like to point out is the commission overruled the ALJ with respect to the 6C protocol. And the commission then came back and said, asked counsel to brief, to provide The commission reviewed the ALJ de novo. The commission reversed the ALJ on some issues, modified on the other issues, and there was no prejudice caused to the other side by the fact that the issue of the 2012 priority date surfaced now. They found all the prior art. The snot grass goes way back to 1994-96. The 6C protocol goes back to 2006. And at that time, the commission was well within its rights to find priority date in 2012 because the review was de novo and this whole issue surfaced because the 6C was invalidated as prior art. And so the commission actually asked for the briefing on 112 versus 120. So we don't understand why the commission found that the issue was waived. Mr. Joshua, you are into your rebuttal time. If you want to take a minute and say something about the merits of the written description question, I'll give you a little bit of extra time on rebuttal. Okay. On the merits of the... About whether the written description supports or does not support the claim requirements for the security key. So the written description in 2012, with respect to the 026, we have laid out all the claim limitations and why we believe there is support. Even in the 026 patent, with respect to the 026 patent application, what the commission and the ALJ found is that the elements of the claim, the reader, the transponder, the antenna, and all the other components of the claim are all in the 026 specification. The point of contention is the communication protocol. Is one security key sent the first time, a response received, and a second security key received, or are both security keys sent at the same time? And the court below found that that is not clear enough in the 026 patent application. However, this is not a situation where there are a million different possibilities. Everybody acknowledges that security keys and multiple exchange security keys are disclosed in the 026 specification. So the only possibility is you send one, and then you send the second, or you send both at the same time. So given just those two possibilities, blaze marks are not needed, as one of the cases mentioned, because this is not a situation where you have a million chemical compounds and a million possibilities of putting the formula together. There are only two possibilities. And so we believe that the communication protocol is disclosed for one of ordinary skill in the art. Okay. Why don't we hear next from the government, and we'll restore your original five minutes for rebuttal. Thank you, Your Honor. May it please the court. Neology's reply does not challenge the substantial evidence supporting the commission's determination that five claim limitations, three of which appear in all of the asserted claims, lack written description support in the common specification. That substantial evidence can be found in the commission's brief and is discussed at pages 8 to 12 and 30 to 40. Can you address what we spend virtually all of our time just discussing, which is the question of whether neology waived, as the commission said it did, an argument that written description here was provided by the claims filed in 2012 in the two applications that led to these two patents, never mind the 026. Right. So the commission did not abuse its discretion in finding that neology simply did not raise its original claims argument before the ALJ and in its petition for commission review. And in here, original claims is a squirrely term here. Let's call them the 2012 claims because the original claims were filed as part of the 026 and the law is very different about those two things. I completely agree, Your Honor. So let's call them the 2012 claims. So Neology's counsel points to two pages in the appendix. None of those pages actually clearly state that neology was relying on its claim language for written description support for 2012 filing date. Also, neology's reply... Right. In the reply, I think Mr. Joshi says that the lawyer for the commission staff acknowledged that this argument was being made. Can you address that? Right. So neology's reply on page three quotes from OUII's attorney at the hearing and also quotes from CAPTCHA's expert testimony. Neither of those passages actually state that neology was relying on the claim language for a 2012 filing date. Those statements were simply to state that, well, if we're looking at written description, claims could be part of the written description support, but neither one of them, OUII or And, you know, the commission gave neology an opportunity... That's true, but I'm not sure that's responsive to the ground on which the commission decided this particular matter, which was wavered. Namely, that neology simply never argued to the ALJ that the 2012 claims fall into that category. Maybe not a large category, but not an empty category where claims can provide their own written description support. Well, the statements that neology quotes from on its reply brief on page three simply does not support a lack of waiver. Those statements simply state that, well, claims could be considered part of the specification, but they do not go as far as neology's counsel asserts that these are statements that there's actually neology adequately raised an argument that claim language itself provides adequate written description support for a 2012 filing date. And neology's briefs marshal no evidence to support this argument. Its briefs cite no statement that it has made to clearly say that it's presented such an argument before the ALJ. And I'd like to point out that even after the ALJ found these claims invalid for lack of written description and that neology could not claim a 2003 priority date in its commission's petition for review, it never raised an original claim or a 2012 claims argument at that time, too. It was only after the commission requested the parties to brief based on the record evidence and arguments made before the ALJ whether the ALJ had conflated the two issues that neology then presented arguments that, you know, the ALJ should have looked at the claim language and other underlying disclosures. Can I ask you a merits question? Some of the references to keys that appear in the spec include the word exchange keys. If nothing's being transmitted back and forth, what does that word mean? So the evidence that was presented, the spec uses credit and debit exchange keys, exchange encrypted keys, security keys, cryptographic keys. It even uses encryption keys. All of these keys are disclosed at one part of the specification or another. There's no evidence that these exchange keys are the security keys, as neology claims. In the very paragraphs, the three paragraphs that recite security keys that are stored in the cryptographic block. And it's telling that neology's briefs mention nothing about cryptographic keys, yet that was one of the basis. But I ask you, I think specifically, the one that at least caught my attention maybe incorrectly is that there's either one or two uses of exchange keys.  So at one time at the hearing, neology's expert testified that inherent in the concept of exchange is that there's transmission. But the commission found that that testimony was not credible because prior to the hearing and his deposition, he had said these very same exchange keys do not mean that, he did not know whether those  conflicting testimony, the commission and the ALJ determined that his testimony was just simply not credible. And on the face of all of the other record evidence, including intervener's expert testimony and the inventor's testimony, and looking at the specification itself. What did the testimonies supporting the written description challenge say the word exchange meant when used in reference to exchange keys if it didn't mean that those keys were moving back and forth? It's kind of a striking word. It is. And the ALJ, if I could refer to the ID at appendix 162, the ALJ explained, well, a person of ordinary skill would not know whether exchange refers to transmitting keys between a reader and a tag. There's nothing that describes to one of ordinary skill this exchange is actually between the reader and the tag as required by the claims. But also that this could be an exchange of data between the reader and tag and not really an exchange of the actual keys, the security keys as the claims require. So just using the word exchange keys and exchange encrypted keys, one of ordinary skill in the art looking at this disclosure does not know whether there's exchange of data, who's being exchanged, what is being exchanged between what two entities are being exchanged. I can't recall. Did the ITC or the ALJ explain? I mean, you're telling us why it's reasonable to conclude exchange key doesn't necessarily mandate the So then is there some alternative reasonable reading of what an exchange key is for? So what the commission found was that there's substantial evidence supporting because the cryptographic block has both security keys and cryptographic keys that there's substantial evidence supporting that these exchange keys are in fact cryptographic keys and not security keys. There's no dispute between the party's experts that cryptographic keys and security keys are two different things and that this specification distinguishes between the two. And this is Goldberg's testimony. Just stay with exchange keys. You're not talking about cryptographic keys and security keys. I'm just trying to understand what are these various references to exchange keys in this specification about? What are they really about if they're not about swapping keys back and forth? There's testimony from the inventor that these at one point in the spec is for exchange keys for exchanging. Let me see what the exact wording is. With four exchange encrypted keys that these are encryption keys and encryption keys are for purposes of the this investigation before the experts. So these are additional cryptographic keys beyond the cryptographic keys already discussed and contemplated in the specification? This is why it supports the commission's determination that these exchange encrypted keys are the cryptographic keys which are the same thing as these encryption keys that are also discussed in the specification. You're telling me the patent is using three different terms to describe the same thing? Cryptographic keys, encryption keys, exchange keys, they really all mean the same thing? That is what the evidence. That can't be right. Well, if you look at the prosecution history for the 026 application where the applicant added the claim language security keys for the very first time and for support, this is at appendix 4227, for support of this newly added security key limitation, the applicant stated that the present application teaches a security management unit that checks and validates cryptographic keys. They are sent to a cryptographic block. The cryptographic block stores the keys and these keys are checked and validated to grant or deny access to the memory chip. Well, that's possibly equating security keys with cryptographic keys. I'm trying to figure out what are the exchange keys as disclosed and what are they actually doing? And nowhere in this response did applicants rely on exchange keys for disclosure of these security keys. For all of the evidence, the commission even asked the parties to brief during review of the ALJ's ID, all of these different uses, the keys and the disclosure, what does it mean? What is the relationship between all of these keys? And do any of these keys actually mean the claim security key? And in none of the briefings before the commission were the parties able to provide any additional evidence beyond this. Thank you. I think we should hear from Mr. Mammon now. Good morning, Your Honors. Nathan Mammon on behalf of the intervenors, CAHPS, Traficom, and STAR systems. If I may start with Judge Farner, your last question, and Judge Chen on the exchange of what exchange keys mean. I think you'll find that the inventor at Appendix 1705 and 1706 admitted that exchange keys are not actually sent, that they're keys used for encryption, but they would not be keys that were sent. And there's reference to the inventor's deposition testimony in those passages as well, where he acknowledged it during his deposition. He was asked point blank, are these exchanged? And he said no. The neology's expert, Mr. Goldberg, at 3058 and 3060 and 3061, acknowledged that exchange keys are used for encryption and may not be exchanged between a reader and tag. And that's neology's witnesses. Dr. Durgin, the intervenor's witness, testified in Appendix- Didn't Goldberg also say that he- well, he said a few different things, didn't he? And that goes to your honors. You're skipping over something. He did at one point say it means that exchange keys are transmitted. He did on his direct testify of that. When confronted on cross-examination about contrary testimony, both deposition and his expert report, he admitted on cross-examination that actually he had had a different opinion and stated that. And the commission was entirely in the ALJ, entirely in the right, to weigh that conflicting testimony and figure out which time was Dr. Mr. Goldberg- Self-conflicting testimony. Self-conflicting testimony, which time was Mr. Goldberg telling the truth, and combined with the other evidence, including the intervenor's expert, which one to believe. And so if I didn't mention it, Dr. Durgin's testimony is at Appendix 2433. Now, if I may go back to the waiver question and, Judge Chin, your question of whether this was ever raised of the original claims. Neology pointed today to two- Can we just- I'm sorry, Your Honor. Can we keep calling them the 2012 claims? 2012, yes, Your Honor. We fully agree with that description. Neology referred, Your Honors, to Appendix 765 and Appendix 4775. If, Your Honors, when you look at that, though, it's very clear in the context. What they're saying is we're relying on the 026 application and even the language of except for the claims. What they're referencing in that passage on 765, except for the claims, our 044 patent and 436 patent are exactly the same as our 026 application. That was the argument. What about the statement of the office staff quoted on page 3 of the gray brief? I think it's from 1391 of the appendix. The statement that OUII staff attorney made in the opening was, I think, acknowledgment that, look, certainly it's possible to have original claims provide support, but that was never relied on here. And the levels of waiver, Your Honor, are multitude. There's at least six levels of waiver where Neology has waived this argument, starting first with the notice of priority date that was acquired by the ALJ's ground rule 4. On March 2nd, they submitted a notice of priority date asserting priority to 2012. Never raising the 2012 claims. And the ground rules require them to have the 2002 to the provisional, the original provisional. Never raising the 2012 claims. And the ground rules require them to show good cause to ever change that date. Going to responses to the intervener's contention and interrogatories, which you'll find in appendix 6240 through 6248, they were asked in response, look, we think your claims don't have written scripture support. Identify for us where you think they are. Even in those passages where they talked through the 044 and 436 patents, they never mentioned the claims. They identified portions of the specification from those applications as filed in 2012. Did not include the claims. They omitted those. In the pre-hearing brief at appendix 42, as the commission opinion references, they never argued reliance on original claims. Their opening statement, which you'll find in appendix 1323, neology's counsel at the time said that the, acknowledged that the respondents argued the claims lack written description and that they also contend, quote, they also contend that they're not supported by disclosures and therefore lack priority. Neology's counsel said that the, basically the two questions become one. The crux of the arguments is that the disclosure of the 036 application does not provide adequate written description for the asserted claims of the security key patents. Never relying on original claims. Can I ask you this question? Suppose, just for purposes of this question, that this issue had not been waived. What is the argument that you would make for why the 2012 claims are not sufficient written description support for the ultimately issued claims in these two patents, 436 and 044? Well, certainly the argument, I mean this court has acknowledged in Gentry Gallery and other cases in Ariad that original claims don't always provide support. Your Honor. Not always. And the kind of claims that were featured in Ariad were claims essentially where the originally filed claim that's being talked about as the possible basis is very general and very functional and that wasn't going to be enough. This doesn't seem to be that kind of claim basis for a written description argument. This seems rather specific. Your Honor, I think to answer your question, if you look at Gentry Gallery and other cases, there could be such a disconnect and there is such a disconnect between these claims and what the patent talks about that there would be a written description issue there. But to Your Honor's point, because this was waived six times over and only got to four of those waivers, there was never any expert testimony by their side or anyone to address these original claims. It was not at issue during the hearing because they were clearly relying on the 026 application and they had to. They had to because they admit what Mr. Josie called prior art was a 60 standard that they were accused of infringing. Under this Court's precedent in several cases, if the thing that you're accused of infringing would post or predate your claims, you're invalid over those claims. And so it was an oversight that they had to claim priority back to the 026 application because if they didn't, as their own witnesses admitted, the claims would have been invalid. Unless Your Honors have any questions, I think this is only one of the grounds. So we think it's sufficient, but certainly there are other ground, prior art ground, that the Commission found the patent invalid would be independent sufficient. Thank you. Mr. Josie. Thank you, Your Honors. So a couple of things I'd like to point out. First, I'd like to give you, Your Honor, a reference to APPX 4775. This is our first post-hearing brief, initial post-hearing brief, where it states at the bottom, First, claims based on the specification that has been used throughout the security key patent family, beginning with the 026 application and continuing through the applications that have been filed after the 044 and 436 patents, have never received even a first rejection on the basis of lack of written description. So there, at least we implicitly invoke the originally filed claims. I'd like to mention that the enablement of the patents have never been challenged. And the time— Can you just address one point that I think I'm remembering from the government's brief? The government defends the Commission's finding of waiver and then goes on to make a couple of maybe really one point kind of on the merits of this 2012 claim issue. And the point that I think is sticking in my mind is you said repeatedly these are continuation applications, not continuation in part applications. So you're not really well positioned to say something was in the 2012 claims that wasn't already in the 026 application. And in order for this concentration on the 2012 claims to make any difference, there would have to be a difference between those two things and then it wouldn't be a continuation. Can you address that? Well, Your Honor, continuation applications are filed all the time. Where the originally filed claims of the continuations are different from the preceding case, but they're still called continuations. And the originally filed claims are still considered part of the specification. With respect to contention interrogatories that they brought up, well, in contention interrogatories we would answer based on what's being contended. And they have never made any kind of a prima facie case and they still couldn't make it now when you gave them a chance to say why in this case the originally filed claims, which everybody agrees are identical to the issued claims. Can you just say 2012 claims? My apologies. Why the 2012 claims, which are identical, there are situations where cases talk about Guinness species, what is actually mentioned in the originally filed claims versus what they mature into at the end. And if there is a difference, then sometimes there might not be support. But this is a textbook case where there is 100% support. The 2012 claims are identical to the issued claims. And one more thing I would like to mention is that the Commission's and the ALJ's approach to analyzing the snot grass prior art reference versus analyzing the 026 specification is very different and inconsistent. With respect to snot grass, they stretch every maybe into all the possibilities. For example, with capital T-H-E, there are only five mentions of that term as compared to 46 mentions of arbitration number in that specification. But the PTAB got it exactly right, that there is nowhere there is disclosure in the snot grass specification as to what the capital T-H-E does in the reader transponder interaction. But there they say, well, this is possible, that is possible, the expert said this, but the specification doesn't say anything. Now take a look at the old... Did the experts agree in this case? I mean, maybe there weren't the same expert testimony in those IPR petitions. But in this particular case, did both experts agree that there is a received tag that is compared to a stored tag? No, no. No, they didn't? No. There wasn't anything like that? No, no. In fact, the snot grass specification teaches a way. No, I'm talking about what the experts agreed to. I know you want to go on and talk about something else. No, no, I apologize. Other references in snot grass itself that you think teach a way, but I'm more trying to understand what the experts testified to. No, their expert obviously said that the capital tag could be used as a security key, but our expert never agreed to it. I'm not talking about the buzzword security key. I'm just talking about the received tag being compared against the stored tag. Did your expert agree that something like that happens in snot grass? No, we did not. Okay. We did not, and even if they did, they would be wrong because the specification doesn't state that. Your time has actually finally run out. Thank you. Thank you. Thank all counsel. Thank you, Your Honor.